First case for argument this morning is 14-1053, Home Gambling Network v. Piche. Mr. Leach. I read the Supreme Court decision yesterday in Limelight. Do I need to address the impact of that decision on this case? This is one of these Internet cases where the method is a method of online gambling. It's impacted by the dichotomy between 271B and 271A, and the theory of liability in this case was one of inducement. Nevertheless, in this case, the player, as claimed in the patent, and the third-party financial institutions that are involved in performing the steps of the method, the third-party financial institution has a contractual relationship with the player and acts as the agent of the player to pay funds out to the casino or not, based on the contractual obligation with the player. So that's an issue in this case. And what's your theory then? Your theory of inducement, I mean, how does that avoid the extraterritorial questions that arise here? Because the steps of the method are performed in the United States by the player. The patent claims this in terms of information lines, and it claims a first information line that's open between the player and the casino, and a second information line that's open between the third-party financial institution and the casino. I think one of the problems, though, is you didn't make this argument in opposition to summary judgment below. Your only argument was an Akamai overruling NTP argument. So I have all of your summary judgment briefs here, and I can't find anywhere where you argued to the district court that the claims should be construed as an act performed by the user in the U.S. rather than an act performed by the casino, which is what they argued below. Sure. I have two things to say to that. First thing is that the only step that was raised in the summary judgment motion was a step identified by a little Roman numeral 9, and we did argue that that was the U.S. Let's not start with that, because that's a different issue. What I can't find is anywhere in the summary judgment brief, or, and I actually read the hearing transcript as well, where you argued that step number 9 was being construed improperly by the defendant because it was a step that pertained to user action rather than casino action. I can't find a claim construction argument by you in your opposition to summary judgment. So I'm not sure that I can find a way in which you preserve that issue on appeal. So show me, if you could, where you raised that argument below. I can. It was at least in the transcript of the hearing. In the transcript of the hearing on the summary judgment motion, we argued that the claim requires a player over the first information line interacting with the casino, and we argued before the court at the hearing that the act is the player interacting. And under our theory, when the player is located in the United States, that step is performed in the United States, because it's performed over that first information line, which is in the United States, and performed by the player. I understand that that's your argument now on appeal, and I understand the argument. Can we start with your summary judgment brief? Did you make this argument anywhere in the brief below? I believe so, but I do believe I can point specifically to the place in the transcript where the argument was made. I can't find anything even vaguely arguing claim construction in the brief itself. Well, if that's the case, I'm glad you asked the question, because I can point it out, and it may be more efficient to do so on rebuttal, but I can find it and point it out to you. In the appendix A4128 through A4129, which is the hearing, I am certain I made that argument, whether I can point you specifically to the place in the transcript where the argument was made. I don't have a record at this point, but I know I made that argument. Are you referring to 4129, line 11? It's 4129. Yes. So I do believe that we made that argument. Assuming it's a claim construction argument, so you were saying that looking at 9-0, it says the player interacting with the casino. So the judge's position seems to have been that something is happening in the casino. Is that not an unassailable conclusion? Well, the court may be right, but that's not the step that the patent requires to be performed. In terms of deciding the extraterritorial argument, I respectfully submit you look at what step does the patent require to be performed, and then where is that step performed. The court got it wrong on what step the patent required to be performed. Let me ask you about a couple of the other steps, and I understand your argument that step 9 was the focus of the argument, but how about, say, step 11, which says in the event of interruption of said information, said first information line, said casino completing the play of the game to determine the outcome pertaining to the player's wager. When doesn't that occur in the casino? You know, my argument with respect to that is that this is a step that is only performed under certain circumstances, only when a certain event occurs. So that the casino performs, or the steps of the method are performed, and that step never is claimed or required to be performed when there's no interruption. What about step 3 or 5, the casino transmitting over the first information line data indicative that the player can make a bet? I'm glad you asked that question, because here I want to get back to my argument that the steps of the patent require this act to take place over this first information line, and in other steps, over a second information line. If the player is in the United States, that first information line is in the United States, and that act of transmitting data over that line, or whatever other steps of patent claims, take place over that information line, and if the information line is in the United States, then the act is performed in the United States. How about step 12, the casino issuing instructions over the second information line to credit the player's account? Yes, the instructions are issued over the second information line. Yes, it doesn't matter. My contention would be that the claim requires instructions to be issued over the second information line, so the act of issuing instructions takes place over the information line. Well, the instructions are conveyed over the information line, but the instructions initiate, presumably, at the casino, right? Well, I respectfully submit that the claim says issuing them over the second information line, so the issuing over the second information line is the step. Merely issuing instructions wouldn't comply with a criminal claim, but the claim requires them to be issued over the second information line, and you can only issue them over the second information line, or where you do that is based on where the second information line is located. I don't know. The hard thing I'm finding about your argument is, I'm just thinking, if a claim term said, you know, mailing a package to a customer, well, it's the act of mailing it that is the accused act. Where does the mailing occur? If it occurred in Costa Rica, then I would feel like that step was performed in an extraterritorial capacity, and it's hard for me to understand casinos issuing instructions or casinos transmitting or casinos opening lines to not constitute acts taking place in Costa Rica. The act may terminate in the United States, but this isn't focused on the user. These are focused on the casino's action, which is undertaken in Costa Rica in this case. I respectfully submit that the act claimed in the patent is not issuing or transmitting, it's doing something, performing something over this information line. So the patent claims that the steps are, you must do certain things over this information line. If you had a patent that said you deliver a package over Interstate Highway 51, then that patent is not going to be infringed if you just deliver the package. The patent is only going to be infringed if you do it over Highway 51 and it fits in the U.S. I understand your argument about step 10, which is that it wasn't fairly presented below and therefore you don't have 56F notice. But if we weren't to agree with that argument, if I accepted all of your arguments about transmitting and issuing, how would you agree or convince me that step 10 isn't performed in Costa Rica? Determining the outcome, whether the player's bet is won or lost, said player viewing live play of the game at the display to confirm the outcome. Determining the outcome is undoubtedly done by the casino and this isn't over any information line. It's done by the casino. I think if I had an opportunity to present a claim construction presentation at the court below, I could show that this patent is claimed as a method of a player participating remotely in a casino game. And it's primarily written from the player's perspective. And the claim says in its entirety that said player viewing the live play of the game at the display, which is the player determining the outcome. But we'll read the rest of it because it seems to me that the rest of that clause tends to undermine your argument. It says determining, so we don't know yet who does the determining, or at least it's not absolutely clear. But when we get to the player, it says the player viewing the live play of the game at the display to confirm the outcome, which suggests, at least to me, that the determining is done by a first party, that is to say the casino. And what the player does is to confirm that which the casino has determined. Don't you think that's the most natural reading of that? No, the outcome is something that takes place. For example, if it's a course race or a sporting event, then the outcome is not really determined. The outcome is determined by where the dice end up in a game of craps. The outcome is determined by what the card is. But presumably the dealer announces you win or you lose, and that's a determination made ultimately by the casino. If there's any dispute, that would be resolved based on the casino's determination that you lose. And then the player, as I read this clause, confirms that the outcome determined by the casino is correct. Isn't that the correct reading of that? I don't think so. I think that the claim is acceptable of reading that this is written from the player's perspective. So the player is both determining and also confirming his own determination? No, he's confirming and he confirms it by determining what the outcome is. At least that's the way I would read it, and I would have really liked to have had more than five minutes to present a claim construction argument on this below, which is one of my problems. And I see I only have one minute left. Your Honor, may it please the Court, I represent the apologies in this matter. And as counsel suggested at the beginning, Akamai has been overruled unanimously by the Supreme Court yesterday, and did so in a determinative fashion. We argue that Akamai was inapplicable, as it only stated. We believe that the only principle was that it allowed for multiple entities to engage in infringement, as opposed to one single entity. Well, yesterday it was a gift almost from the United States Supreme Court, on top of overruling Akamai in its entirety. The Supreme Court gave a specific example of Deep South. Deep South is significant because that was what was influential in the NTP decision. And when the United States Supreme Court addressed Akamai, it said, but we have already rejected the notion that conduct, this is the Supreme Court's opinion on Akamai yesterday, we have already rejected the notion that conduct which would be infringing in altered circumstances can form the basis of contributory infringement, and we see no reason to apply a different rule for inducement. In Deep South Packing Co., a manufacturer produced components of a patented machine and then exported those components overseas to be assembled by its foreign customers. The assembly by the foreign customers did not violate U.S. packing laws. In both Deep South and this case, the conduct that defendant induced or contributed to would have been infringing if committed in altered circumstances. In Deep South, if the machines had been assembled in the United States, and in this case, if performance of all the claim steps had been attributable to the same person. In Deep South, we rejected the possibility of contributory infringement because the machines had not been assembled in the United States. We've talked with your friend about a lot of the limitations in the claim, but it seems to be number nine, which is the one that's the focus and the one you raised in the summary judgment motion, seems a little weak in terms of the argument you're making. Because interacting, I don't know, is it your view that interacting has a plain and ordinary meaning that necessarily implicates action at the casino? Your Honor, yes it does. In this instance, reading the patent itself, the whole step says, the player over the first information line interacting with the casino to control the play of the game until an outcome is obtained. This whole system, Your Honor, this is an actual live casino. There's real people. There's other systems where people are just looking at graphical images of a black jacket. This is a video camera taking a picture of the live dealer and other players. This is a live casino game. Somebody's actually playing the game in Costa Rica. All the actions of the boss, all the actions of the dealer, everything. But this limitation focuses on what the player is doing. We called out the other limitations which deal with casino instructing, casino transmitting. In this particular limitation, it's really just the player's actions that are in play here. Your Honor, I would disagree with that because the control of the game, by definition, is asking for another card, controlling the play of the game. The request is occurring in the U.S. The request is the player in the U.S. asking for another card. And when that player makes the request, it is done in Costa Rica? No, when he makes the request, he's making it in the U.S. The request is received in Costa Rica. But this particular element doesn't go to reception. It goes to making the request, right? It certainly does work with the player's request. It's certainly focusing on that. But interacting with the casino... Here's my problem. If I adopted the rule that you're proposing, that this language would be language implicating extraterritoriality, then how could anyone ever get any sort of patent on activity performed in the U.S. which is directed outside the U.S.? Any transmission? Suppose I come up with a tele-networking system that allows you to communicate with Italy. I write the claims directed entirely to what you're going to do in the U.S. to initiate the contact. Your suggestion about how I should interpret this would mean because the contact was ultimately occurring with Italy, even though all the claims were written to focus on the U.S. component, off the table. You might be right. And I'd be sympathetic to that then. But I would say two points to that. First, NTP was a case where it solely talked about interface. And the language of the method involved in NTP was an interface or an interface switch. No requirement of where that interface is, but the interface occurred in Canada. In the real world, that interface occurred in Canada. A single portion of a step. It wasn't the whole step. It was just focusing on the interface or interface switch is located in Canada. That one step extraterritoriality made it non-infringing as a method path. Just out of curiosity, why don't you just settle on step nine? It looks to me as if you would have had a much easier row to hoe if you had settled on one of the several steps, for example, 10, 11, or 12. I agree with you. We look at it and say the others are more amenable. I mean, is there some problem with the others that I'm not seeing? No, there's no problem. We focus on step nine because step nine also includes the interaction with those to the prosecution history disclaimer. When we're writing this brief, we're limited to 30 pages. We don't want to brief every step of this claim. And I know they make the argument that we only brief that. But even in their appeal brief, this is page 34 of their appeal brief, they quote from our motion, which says, the specification of method patent confirms it throughout. For example, in the following description of the method as claimed in claim one, step nine. We also, in our motion for summary judgment, when we made the motion, we specifically said, to reach this conclusion, it is sufficient to consider just one of the steps of the method patent, though the same analysis could apply to many more of them, if not all of them. In the motion, and the court clearly picked up on this, I think it's disingenuous to say that they did not. We were clearly making the motion as an example, but the theory was clearly NTP makes it impossible to have an infringement of a method patent when there's extraterritoriality actions being taken. And that can be a very insignificant portion of the method patent. In NTP, don't forget, that's BlackBerry, where I've got two people in this room. I've got a BlackBerry, you've got a BlackBerry. If I send a message to you, a text message, it actually was sent to a relay in Canada. We have two people interacting in this room, sending messages to each other in this room, but this one portion of one step of the method occurred in Canada, necessitating this ruling from NTP. If anything, that was strengthened in the United States Supreme Court's ruling in Akamai yesterday. Now, your argument with respect to prosecution history disclaimer goes to the infringement, not just to the breach of contract? Correct, Your Honor. In interpreting the construction claims, we are allowed to look at the prosecution history. That's bedrock of the law. We are able to look at the prosecution history. There's no dispute looking at the file wrapper that when they applied for this patent, they came up against hedges. Hedges clearly covered and expressly covered Keno. Also covered games like Craps Roulette, things like that. Non-interactive games where you just go up, you buy your ticket, you've got your ticket, and then the game plays out. They express and the file wrapper contains a letter from their attorney stating, we agree to incorporate interaction into the steps to get beyond this, that their claim was that their patent was going to be rejected. They amended their patent to avoid rejection from the patent office. That is clear disclaimer. Is it right that the district court found that to be disclaimer and one of the bases for summary judgment of non-infringement? Absolutely. I read their summary judgment briefs and I didn't see them argue anywhere against disclaimer. They did not. Didn't you argue to us that they waived it below? Yes, but they brought it up now in the appeal. We believe we fully addressed it. How they say it on appeal is that we addressed estoppel below and it's really disclaimer. The district court handled that by citing a case in 2013 that occurred after we filed the motion, which basically clarifies the difference between disclaimer and estoppel. Significantly it says, though distinct, both doctrines serve to constrain the enforceable scope of patent claims commensurate with any subject matter surrendered during prosecution to obtain the patent. They are obviously related. We understand why we cited estoppel, but their failure to and everybody understood the theory. We are saying, look, your file wrapper clearly says you came up against hedges, you amended your patent to get around hedges, and you incorporated interactivity. That's why we focus on interactivity in the motion for summary judgment. We do clearly, as shown in the briefing, use it only as an example and specifically say in our motion, it would, the same theory of the fact that these steps are occurring outside of the United States, would apply to the rest of the steps. It hardly seems necessary for us once we say, here's the theory, it's outside of the United States, and all the steps apply. We're talking about step nine for prosecution of history disclaimer purposes, so we'll talk about it here as well. Maybe we could have chosen a better one, but we certainly discussed it, and the judge clearly understood that's what we were doing, so that's that. Other than those things, we would submit that the discovery issues, they haven't met their burden on that. That's on appeal on an abuse of discretion standard. The court clearly cited the correct standard. What was the subject matter of the portion of the database that was compromised or in dispute here? What did that have to do with? We've read pages and pages and pages of briefing on the database dispute, but I never was able to discern what it is that that contested portion pertained to. So what happened, Your Honor, is there's a database and in the first… I understand the background. I'm just focusing now just on the question of what was in that portion that was unreadable, according to the plaintiffs in their copy. So what they're saying is there's 1.4% of their database that was unreadable. The way the databases are constructed is it's just one column, so it would have certain data pertaining to certain… So what is certain data? What was it about? Oh, it's going to be an IP address. It's going to be a wager. So the idea is wagers of some plaintiffs would be available, but not of others. Excuse me. Some wagers would be available, but not of others. So it's not a distinct… It's not a category. It's just part of the overall amount of business that was being done and so forth? Right. Okay. It's part of the overall, so it's not a certain category. And what we show is what happened. That was the first evidentiary hearing, and we had this expert Sergei Shverdkov report which showed, oh, well, it was mounted incorrectly. And we were able to reproduce when it was mounted incorrectly at the second hearing, we were able to reproduce the errors. So you can go through the transcript of that hearing. We reproduced the errors when we mounted it as plaintiffs' experts had mounted it. But when you mount it correctly, you do not receive any errors and you can access all the data. So to say that they continue to say it's not working, it's not working, it's not working, but there's some… and the briefing is voluminous on that point. You've said that's why the court had multiple hearings on the issue and came out the way it did. All right. Is there any other questions? Thank you. Thank you, Your Honor. We'll give you a couple minutes. Thank you, Your Honor. On the prosecution history disclaimer argument, counsel said there was a letter in which the applicant's attorney made certain statements. It's not in the record. If he's referring to an interview summary, which is not in the record, that was a statement by the examiner. If he's referring to the remarks in the amendment that the applicant submitted, all the applicant said in the remarks in the amendment was, applicant submits herewith these new claims reciting a player interaction step to control the play of the game, print claim 21, step IX, which became claim 1. That's not a disclaimer. And these are distinct documents as counsel just submitted in his argument. Had the motion for summary judgment been made on the doctrine of prosecution history disclaimer, we could have addressed that because this is not an unequivocal disclaimer and doesn't comply with the court's law governing that distinct doctrine of prosecution history disclaimer. The database had to do with financial records. What we never got discovery on was the servers and the database and the computers that control the operation of the game itself, which goes to the merits. We never got merits discovery. Well, but that's a separate issue from the question of the corrupted database. Yes. Which you all spent many pages on. It was a relational database. So once you interrupt, once you knock the file offline, then you break all the links. So you try to... Okay, but that has nothing ultimately to do with the legal issues we've been discussing today as far as I can tell. Which gets to the point of we never got discovery on the merits. That's a different issue. I know, but that's all we were dealing with in this discovery dispute. So I respectfully submit you correctly noticed that we never got to discovery on the merits. Now, I may not prevail below, but what I'm asking is an opportunity like any other patentee to get a chance to put on my case below instead of arguing claim construction for the first time in five minutes up on appeal. Thank you. Thank you. Thank both counsel. The case is submitted.